UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>  vs.<br><br>JALEN WALKING EAGLE,<br><br>          Defendant. | CR. 17-50064-JLV<br><br>ORDER |

      A jury convicted defendant Jalen Walking Eagle of assault resulting in serious bodily injury and first degree burglary. (Docket 63). The jury acquitted defendant of assault with a dangerous weapon. Id. Defendant filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Docket 95). He bases his motion on the discovery of new evidence. Id.

**BACKGROUND**

      A grand jury returned an indictment alleging defendant committed three offenses: (1) assault with a dangerous weapon, (2) assault resulting in serious bodily injury and (3) first degree burglary. (Docket 1 at pp. 1-2). Count one alleged defendant "knowingly assault[ed] Zach Poor Bear with a dangerous weapon, namely, shod feet, with the intent to do bodily harm[.]" Id. at p. 1. Count two claimed defendant "knowingly assault[ed] Zach Poor Bear, said assault result[ed] in serious bodily injury[.]" Id. And Count three asserted defendant "unlawfully enter[ed] and remain[ed] in an occupied structure . . . Zach Poor Bear's residence, with the intent to commit an assault and larceny

. . . during the nighttime[.]"  Id. at p. 2.  All events allegedly occurred on or about February 12, 2017.  Id.  On August 22, 2017, a jury trial commenced before this court.  (Docket 59).  The court sets forth only the trial evidence necessary for resolving defendant's new trial motion.

**I. Trial**

The government called Michelle Elbow Shield as a witness.  Elbow Shield testified that during the early morning of February 12, 2017, she was in bed with Poor Bear at his residence when defendant entered the room with Walter Mousseaux, Jr., after Elbow Shield and Poor Bear had sex.  (Docket 91 at pp. 123-25).  Defendant and Elbow Shield have two children and an on-and-off romantic relationship.  Id. at pp. 118-20, 154.  Elbow Shield testified that after defendant entered the room he neither kicked nor stomped on Poor Bear.  Id. at pp. 130-35.  She testified Mousseaux kicked Poor Bear.  Id. at pp. 131-33.  Elbow Shield stated she was drinking that night and felt drunk.  Id. at pp. 123-25.  Her trial testimony was unclear on whether defendant assaulted Poor Bear at all.[1]

Mousseaux testified at trial.  Mousseaux testified he drank a portion of a "jug" of vodka on the night of February 11, 2017.  Id. at pp. 161-62.  He testified he and defendant arrived at Poor Bear's residence between 2 and 3

---

[1]Elbow Shield's testimony lacks clarity on this issue because a significant part of the government's examination consisted of impeachment of Elbow Shield via prior inconsistent statements.  During the government's examination, the court explained to the jury how the testimony should be received and the difference between substantive evidence and impeachment.  (Docket 91 at pp. 129-30).

2

a.m. on February 12, 2017, and walked in on Elbow Shield and Poor Bear having sex. Id. at p. 169. According to Mousseaux's testimony, once Mousseaux and defendant entered the room, defendant punched Poor Bear in the face, Poor Bear fell to the ground and defendant kicked and stomped on Poor Bear.[2] Id. at pp. 169-71. Then defendant and Mousseaux took a television, DVD player and space heaters from Poor Bear's residence. Id. at p. 171.[3]

Although defendant did not testify, a statement he made to law enforcement was substantive trial evidence and admitted in the form of an audio recording played for the jury. Exhibit 12; see Dockets 60 & 91 at p. 191. In his interview with law enforcement, defendant stated after he entered the room where Poor Bear and Elbow Shield were in bed, Poor Bear stood and attempted to fight him, so defendant punched Poor Bear. Exhibit 12; (Docket 102 at pp. 5-7). Defendant stated Poor Bear went to the ground after being punched and defendant hit him further with a closed fist. Exhibit 12; (Docket 102 at pp. 5-7). According to defendant's statement, Mousseaux then began kicking Poor Bear. Exhibit 12; (Docket 102 at pp. 5-7).

---

[2]Dr. Jeffrey Yablong, who treated Poor Bear for his injuries suffered during this encounter, testified to Poor Bear's fractured bones and swollen face. (Docket 90 at pp. 21-28).

[3]In a separate case, Mousseaux pled guilty to larceny. United States v. Mousseaux, CR. 17-50052, Docket 26. Government counsel's examination of Mousseaux included a discussion of his plea agreement and his cooperation with the government. (Docket 91 at pp. 159-60). The court sentenced Mousseaux on October 18, 2017. CR. 17-50052, Docket 45.

At the government's request, the court's jury instructions included aiding and abetting in setting out the elements of the charges.[4] (Dockets 51 & 57 at pp. 6-15). The first charge, assault with a dangerous weapon, consisted of four elements:

1. On or about February 12, 2017, Mr. Walking Eagle knowingly assaulted Zach Poor Bear or aided and abetted in that offense;
2. Mr. Walking Eagle used a dangerous weapon, shod feet, to commit the assault;
3. Mr. Walking Eagle intended to inflict bodily harm to Mr. Poor Bear; and
4. Mr. Walking Eagle is an Indian person and the offense took place in Indian country at Pine Ridge, South Dakota.

Id. at pp. 6-8. For the second charge, assault resulting in serious bodily injury, there were three elements:

1. On or about February 12, 2017, Mr. Walking Eagle knowingly assaulted Zach Poor Bear or aided and abetted in that offense;
2. Two, the assault resulted in serious bodily injury to Mr. Poor Bear; and
3. Three, Mr. Walking Eagle is an Indian person and the offense took place in Indian country at Pine Ridge, South Dakota.

Id. at pp. 9-11. And the court instructed the jury on the elements of the third charge, first degree burglary, as follows:

1. On or about February 12, 2017, Mr. Walking Eagle unlawfully entered or unlawfully remained in a structure described as the residence of Zach Poor Bear or aided and abetted in that offense;
2. The premises were not, at the time, open to the public nor was Mr. Walking Eagle licensed or privileged to enter or remain;
3. The structure was an occupied structure;
4. Mr. Walking Eagle unlawfully entered or unlawfully remained therein with the intent to commit an assault or larceny;

---

[4]The court provided additional instructions on aiding and abetting and its application to each offense, but those are not necessary to include here. Supplemental instructions on certain definitions within the elements were also given and are excluded here because they do not impact this order.

4

> 5. Mr. Walking Eagle committed the offense of first degree burglary in the nighttime; and
> 6. Mr. Walking Eagle is an Indian person and the offense took place in Indian country at Pine Ridge, South Dakota.

Id. at pp. 12-14.

Upon defendant's request, the court instructed the jury on self defense, which provided in part:

> The defendant's position is he acted in self defense in response to an initial assault against him by Zach Poor Bear. If a person reasonably believes that force is necessary to protect himself from what he reasonably believes to be unlawful physical harm about to be inflicted by another and he uses such force, then he acted in self defense. However, self defense which involves using force likely to cause death or great bodily harm is justified only if the person reasonably believes such force is necessary to protect himself from what he reasonably believes to be a substantial risk of death or great bodily harm.

(Docket 61 at p. 3); see Docket 91 at pp. 199-200.

As stated above, the jury acquitted defendant of the first charge, assault with a dangerous weapon, and convicted him of the second and third charges, assault resulting in serious bodily injury and first degree burglary. (Docket 63).

## II. Elbow Shield's Statements

Elbow Shield's history of statements regarding this case is central to defendant's pending motion, so the court details those statements here. Elbow Shield's trial testimony was inconsistent with a statement she made six months earlier during a February 14, 2017, interview with Federal Bureau of Investigation Special Agent Tyler Vose ("SA Vose"). (Docket 91 at 126-35). She acknowledged the inconsistency. Id. During the February 2017 interview,

5

Elbow Shield told SA Vose that defendant—and not Mousseaux—kicked and stomped on Poor Bear. Id. at pp. 130-32. Regarding her prior statements to SA Vose, Elbow Shield testified at trial, "Well, I basically lied." Id. at p. 128. Later in the government's direct examination, Elbow Shield explained she was upset when SA Vose interviewed her in February 2017, stating, "I lied the first time because I was mad and angry, so everything that you guys have for the first time is all made up." Id. at p. 141.

On May 17, 2017—before trial but after her interview with SA Vose—a defense investigator interviewed Elbow Shield. (Docket 86 at p. 2). During her May 2017 interview, Elbow Shield provided an account of events generally matching her trial testimony. Id. In the interview, she states defendant assaulted Poor Bear, but that Mousseaux—and not defendant—kicked and stomped on Poor Bear. Id.; (Docket 87 at pp. 14-15). The defense disclosed the interview and its contents to the government on approximately August 8, 2017. (Docket 87 at pp. 8-9).

On October 24, 2017, a grand jury returned an indictment charging Elbow Shield with the crime of false statement. United States v. Elbow Shield, CR. 17-50161, Docket 1. The indictment alleged:

> Elbow Shield[ ] did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter . . . [specifically]: on February 14, 2017, the defendant, Michelle Elbow Shield, told [SA Vose] that Jalen Walking Eagle . . . kicked, stomped and hit Zachariah Poor Bear on the morning of February 12, 2017. [Elbow Shield] then and there well knew these statements and representations were false as she later testified under oath in Federal District Court on August 23, 2017, that she lied to [SA] Vose, because she was mad at Walking Eagle.

6

Id. at p. 1. Elbow Shield pled guilty to the offense and, along with her attorney and the prosecutor, signed a factual basis statement on March 2, 2018, indicating:

> On February 14, 2017, Elbow Shield told [SA] Vose that Walking Eagle stomped on Poor Bear. However, on August 23, 2017, Elbow Shield testified in Federal District Court that she lied to SA Vose and that Walking Eagle did not stomp on Poor Bear, but that Mousseaux stomped on Poor Bear.
>
> Elbow Shield well knew these statements and representations were false and material to the investigation at the time she spoke with SA Vose. Elbow Shield's false statement to SA Vose was material in that Mousseaux was not prosecuted for assaulting Poor Bear with a dangerous weapon, namely, shod feet.

CR. 17-50161, Docket 35 at p. 2. The first sentence of the factual basis statement provides: "The Defendant states the following facts are true, and the parties agree that they establish a factual basis for the offense to which Defendant is pleading guilty pursuant to Fed. R. Crim. P. 11(b)(3)." Id. at p. 1. The court's sentencing of Elbow Shield was set for July 6, 2018. CR. 17-50161, Docket 43.

**ANALYSIS**

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Approximately eight months after the jury's verdict, defendant filed his Rule 33 motion for a new trial based on new evidence. (Dockets 63 & 95). The motion is timely under Rule 33(b)(1).

7

The core of defendant's motion is the government obtained convictions by providing the jury with false testimony. (Docket 96 at p. 1). In defendant's view, the positions the government took in his case and Elbow Shield's false statement case reveal "the Government presently represents/believes that Mr. Mousseaux was the culpable actor in the stomping and kicking of Zachary Poor Bear." Id. at p. 5. Consequently, defendant claims the government "knew, or should have known, that Mousseaux's testimony at Defendant Walking Eagle's trial was false." Id. at p. 6. Defendant argues the government "proceeded to call Walter Mousseaux to the stand and held him out to the jury as a truth teller and as the only way of satisfying elements required to prove its case against Defendant. However, Elbow Shield's *Factual Basis Statement* reveals that the Government used testimony it knew, or should have known, to be false." Id. at p. 7 (emphasis in original).

"To obtain a new trial on the basis of newly discovered evidence, [the United States Court of Appeals for the Eighth Circuit] require[s] the moving party to demonstrate that '(1) the evidence is in fact newly discovered since trial; (2) diligence on his part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) it is probable that the new evidence would produce an acquittal at the new trial.'" United States v. Shumaker, 866 F.3d 956, 961 (8th Cir. 2017) (quoting United States v. Bell, 761 F.3d 900, 911 (8th Cir. 2014)). "A modified test is applied, however, when the newly discovered evidence involves a claim of perjury by prosecution witnesses." English v. United States, 998 F.2d 609, 611 (8th Cir.

1993).  "To prove prosecutorial use of false testimony, a defendant must show that: (1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." United States v. Funchess, 422 F.3d 698, 701 (8th Cir. 2005).  The "modified test" changes the fifth factor Shumaker lists.  Rather than showing "it is probable that the new evidence would produce an acquittal at the new trial[,]" Shumaker, 866 F.3d at 961, the defendant "need only prove 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " English, 998 F.2d at 611 (quoting Lindhorst v. United States, 658 F.2d 598, 602 (8th Cir. 1981)).  "[I]n considering a motion for new trial, the court need not view the evidence in the light most favorable to the verdict and it is permitted to weigh the evidence and evaluate the credibility of the witnesses." United States v. Hassan, 844 F.3d 723, 725-26 (8th Cir. 2016).

The government contends defendant's motion does not meet the legal standard, specifically the five factors delineated above.  (Docket 102).  While the Elbow Shield prosecution for false statement occurred after defendant's trial, the government argues defendant's motion relies on evidence he was aware of at trial.  Id. at pp. 10-11.  The government claims any potentially new evidence about Elbow Shield's statements should have been discovered by defendant, merely serves as cumulative or impeachment evidence, is not material and did not affect the jury's verdict.  Id. at pp. 11-21.

9

Defendant appropriately bases his motion on newly discovered evidence and he exercised diligence.  The prosecution of Elbow Shield after defendant's trial and the factual basis statement signed by her, her attorney and the prosecutor constitute fresh developments relating to defendant's trial.  Before the government signed Elbow Shield's factual basis statement, the government had not taken a formal position on Elbow Shield's truthfulness regarding the details of defendant assaulting Poor Bear.  The government simply called her as a trial witness and conducted its examination.  But once the government approved the factual basis statement, it embraced the facts that Elbow Shield lied when she told SA Vose in February 2017 that defendant kicked and stomped on Poor Bear.  Defendant seizes on this move by the government because during trial the government elicited testimony from Mousseaux that defendant kicked and stomped on Poor Bear as alleged in count one of the indictment.  Defendant believes Elbow Shield's factual basis statement demonstrates the government made use of false testimony from Mousseaux. Defendant brought this matter to the court's attention almost immediately after he discovered it.

Defendant, however, fails to show the government provided the jury with false testimony and he fails to show the alleged perjury affected the jury's verdict.  In discussing "prosecutorial use of false testimony," the Eighth Circuit specified, "[p]erjury entails not only false testimony, but an additional element of intent[.]"  United States v. Espinoza, 684 F.3d 766, 780 (8th Cir. 2012). Defendant must show Mousseaux "provided false testimony concerning a

matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Id. (internal quotation marks omitted). Even though Elbow Shield's factual basis statement suggests Mousseaux "may have been mistaken, nothing in the record supports a finding that he provided willfully false testimony." Id. Defense counsel thoroughly cross-examined Mousseaux and challenged his recollection. (Docket 91 at pp. 174-85). Mouseaux testified he shared a "jug" of vodka before witnessing the encounter between defendant and Poor Bear. Id. at pp. 160-62. Appreciating the context of Mousseaux's account of the events, especially his alcohol consumption, it is more likely his testimony about kicking and stomping was "a result of confusion, mistake, or faulty memory[,]" rather than a "willful intent to provide false testimony[.]" Espinoza, 684 F.3d at 780.

Even if Mousseaux provided false testimony, defendant has not demonstrated "there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." Funchess, 422 F.3d at 701. The allegedly false testimony relates most directly to the first offense in the indictment, assault with a dangerous weapon. The jury found defendant not guilty on that count. (Docket 63). The conviction for the second offense, assault resulting in serious bodily injury, does relate to the testimony defendant claims is false. This is also true of the conviction on the third offense, first degree burglary, namely the fourth element regarding defendant remaining in Poor Bear's residence with the intent to commit an assault or larceny. But the "reasonable likelihood that the perjured testimony could have

11

affected the jury's verdict[ ]" on these convictions is offset by other evidence. See Funchess, 422 F.3d at 701.

For the second offense, there is defendant's statement that he punched Poor Bear multiple times, causing him to fall to the ground. Exhibit 12. Defendant's admission to striking Poor Bear was central to the evidence at trial, as shown by defendant's request and the court's decision to instruct the jury on self defense. (Docket 61 at p. 3); see Docket 91 at pp. 199-200. Turning to the burglary offense, the fourth element could be met by defendant's admission of punching or Mousseaux's testimony on defendant and Mousseaux stealing possessions from Poor Bear's residence after the assault. (Docket 91 at p. 171). Although there is a connection between the allegedly false testimony and the convictions, it was collateral and minimized by other overwhelming evidence presented at trial.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion for a new trial (Docket 95) is denied.

IT IS FURTHER ORDERED that a sentencing hearing will be scheduled.

Dated August 13, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE